IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

CUNNINGHAM ENERGY, LLC, et al.

        Plaintiff,

v.                              CIVIL ACTION NO. 2:20-cv-00061

VESTA O&G HOLDINGS, LLC, et al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Plaintiffs Cunningham Energy, LLC, and Cunningham Lease Acquisitions, LLC's (collectively "Plaintiffs" or "Cunningham Energy") Motion for Specific Performance and a Preliminary Injunction. (ECF No. 9.) For the reasons discussed more fully below, the Court **DENIES** Plaintiffs' Motion.

*I.    BACKGROUND*

This case arises out of a contract dispute between Plaintiffs and Defendants Vesta O&G Holdings, LLC, Vesta VFO, LLC, Rick Cott, and Joshua W. Coleman (collectively "Defendants" or "Vesta"). In 2017, representatives of Cunningham Energy met with Defendant Rick Cott ("Cott") about funding a new company that would receive substantially all of Cunningham Energy's assets. (ECF No. 10 at 2.) At that time, Cott worked for an investment company that was subsequently acquired by Vesta. (*Id.*)

On November 28, 2018, Vesta and Cunningham Energy executed a non-binding Letter of

1

Intent (the "First LOI") memorializing earlier promises made by Cott, now acting as Vesta's Chief Investment Officer. (*Id.* at 3.) Under the First LOI, Cunningham Energy agreed to transfer various assets, including certain real property and leases, to a newly formed holding company controlled by Vesta. (ECF No. 10-1 at 2–3.) In exchange, Vesta would:

> (1) contribute capital in order to eliminate the existing debts and obligations of Cunningham Energy, including approximately $1,980,804.53 identified as "Tier One Payables";
>
> (2) contribute capital to fund the drilling and completion of seven (7) new wells in West Virginia, including a loan to cover any cost overruns incurred during the drilling of the seven (7) new wells; and
>
> (3) contribute capital to engage and pay Cunningham Energy for the supervision and drilling of the seven (7) new wells for a period of a year and issue 20% of the ownership interest in the new limited liability company (which is to increase to 50% in the future) to Cunningham Energy and appoint a Cunningham Energy representative to the Board of Managers of the newly formed limited liability company.

(ECF No. 10 at 3; ECF No. 10-1 at 2.) On December 4, 2018, Vesta began funding this new venture under the terms of the First LOI, and Cunningham Energy assigned all its revenue generating assets to the control of Vesta. (ECF No. 10 at 3.)

However, in March of 2019, this agreement began to fall apart. (*Id.* at 4.) The parties dispute the events that occurred thereafter. Cunningham Energy claims the parties held a meeting where Vesta demanded it declare bankruptcy, fold its West Virginia operations, and assign its Canadian farmout interest to Vesta's sole ownership and control. (*Id.*) Cunningham Energy alleges it refused to comply with these demands, and Vesta stopped performance under the agreement. (*Id.*) As a result, in May of 2019, Cunningham Energy sued Vesta for breach of contract and other related claims (hereafter the "First Lawsuit"). (*Id.* at 5.) Alternatively, Vesta argues it decided to freeze further funding until the parties could resolve "Cunningham Energy's

2

mounting financial and operational missteps." (ECF No. 12 at 2.) After further funding was frozen, Vesta claims Cunningham Energy filed the First Lawsuit because Vesta refused to allow unbridled access to venture funding. (*Id.*)

The First Lawsuit was settled soon after it was filed, but the parties heavily dispute the circumstances surrounding the settlement. Cunningham Energy alleges the First Lawsuit was settled through the Second Letter of Intent (the "Second LOI"), which is the document Cunningham Energy seeks to enforce through its current motion. (ECF No. 10 at 5.) Conversely, Vesta alleges the First Lawsuit was dismissed after both parties signed a Memorandum of Understanding ("MOU"). (ECF No. 12 at 3.) According to Vesta, the parties entered into the binding MOU with the purpose of "(1) resolving the First Lawsuit, (2) memorializing their joint effort to realize 'the identified value of the School Property', and (3) defining how proceeds from the sale/condemnation of the School Property would be distributed between them and allocated to a potential reformation of their joint venture." (*Id.*) However, following dismissal of the First Lawsuit and allegedly unbeknownst to Vesta's counsel, Cunningham Energy began communicating and negotiating the terms of the Second LOI with other Vesta representatives. (*Id.* at 4.) Vesta further alleges these negotiations resulted in the formation of the Second LOI. (*Id.*)

The Second LOI contains a Holdings Assets clause which Cunningham Energy alleges expressly required Vesta to return property referred to as the "Holdings Assets" if the proposed transaction did not close by November 15, 2019. (ECF No. 17 at 3.) Since the transaction did not close by this date, Cunningham Energy demanded immediate return of the Holdings Assets. (*Id.*) Vesta refused and is still in possession of these Assets. (*Id.*)

As a result, Plaintiffs filed their Complaint on January 24, 2020, alleging fourteen causes

3

of action including breach of contract claims for both the First LOI and the Second LOI. (ECF No. 1 at 9–19.) Subsequently, Plaintiffs filed the current motion on February 10, 2020. (ECF No. 9.) Defendants timely responded, (ECF No. 15), and Plaintiffs timely replied, (ECF No. 17). A motion hearing was held by the Court on March 25, 2020. (ECF No. 25.) Additionally, on April 14, 2020, Plaintiffs filed a Supplemental Memorandum of Law in Support of Expedited Ruling on their motion for a preliminary injunction, (ECF No. 29), and Defendants timely responded, (ECF No. 32). As such, this motion is fully briefed and argued by the parties and is ripe for adjudication.

## II. LEGAL STANDARDS

### A. Preliminary Injunction

"Rule 65 of the Federal Rules of Civil Procedure provides for the issuance of preliminary injunctions as a means of preventing harm to one or more of the parties before the court can fully adjudicate the claims in dispute." *Fred Hutchinson Cancer Research Ctr. v. BioPet Vet Lab, Inc.*, 768 F. Supp. 2d 872, 874 (E.D. Va. 2011). "A plaintiff seeking a preliminary injunction must establish (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008)). "All four elements must be established by a 'clear showing' before the injunction will issue." *Imagine Medispa, LLC v. Transformations, Inc.*, 999 F. Supp. 2d 862, 868 (S.D. W. Va. 2014) (quoting *See Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342, 346 (4th Cir. 2009), *vacated on other grounds*, 559 U.S. 1089 (2010), *reissued as to Parts I & II*, *Real Truth About Obama, Inc. v. FEC*, 607 F.3d 355 (4th Cir. 2010)).

Further, the plaintiff bears the burden of showing a "sufficient factual basis" for granting the injunction "beyond the unverified allegations in the pleadings." *Id.* at 868–69 (citations

omitted). The plaintiff must demonstrate a *likelihood* of irreparable harm without a preliminary injunction; a mere *possibility* of harm will not suffice. *Id.* at 21. Such likelihood of irreparable harm justifies a preliminary injunction to protect the status quo and "preserve the court's ability to render a meaningful judgment on the merits." *United States v. South Carolina*, 720 F.3d 518, 524 (4th Cir. 2013) (quoting *In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 525 (4th Cir. 2003)); *see also Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981) ("The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held."). A plaintiff does not have to prove his or her case in full to succeed on a motion for preliminary injunction, and the findings of fact and conclusions of law made at this stage are not binding at a trial on the merits. *See Camenisch*, 451 U.S. at 395.

    a. *Prohibitory and Mandatory Preliminary Injunctions*

"A preliminary injunction may be characterized as being either prohibitory or mandatory." *League of Women Voters of N. C. v. North Carolina*, 769 F.3d 224, 235 (4th Cir. 2014). "Prohibitory preliminary injunctions aim to maintain the status quo and prevent irreparable harm while a lawsuit remains pending." *Pashby v. Delia*, 709 F.3d 307, 319 (4th Cir. 2013) (citing *Sun Microsystems, Inc. v. Microsoft Corp. (In re Microsoft Corp. Antitrust Litig.)*, 333 F.3d 517, 524 (4th Cir. 2003), abrogated on other grounds by *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006)). "The status quo to be preserved by a preliminary injunction, however, is not the circumstances existing at the moment the lawsuit or injunction request was actually filed, but the 'last uncontested status between the parties which preceded the controversy.'" *Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 378 (4th Cir. 2012) (quoting *Stemple v. Bd. of Ed. of Prince George's Cnty.*, 623 F.2d 893, 898 (4th Cir. 1980)).

However, by contrast, "[m]andatory preliminary injunctive relief in any circumstance is disfavored, and warranted only in the most extraordinary circumstances." *Taylor v. Freeman,* 34 F.3d 266, 270 n.2 (4th Cir. 1994) (citation omitted). "[A] mandatory preliminary injunction must be necessary both to protect against irreparable harm in a deteriorating circumstance created by the defendant and to preserve the court's ability to enter ultimate relief on the merits of the same kind." *Sun Microsystems, Inc*, 333 F.3d at 526. Further, the authority to issue a preliminary injunction, especially a mandatory one should be "sparingly exercised" because "[m]andatory preliminary injunctions do not preserve the status quo and normally should be granted only in those circumstances when the exigencies of the situation demand such relief." *Wetzel v. Edwards*, 635 F.2d 283, 286 (4th Cir. 1980).

### III.   DISCUSSION

Cunningham Energy moves for what it classifies as a mandatory preliminary injunction requiring the specific performance of the Holdings Assets clause contained within the Second LOI. This clause states:

> Holdings Assets:   Cunningham Energy has assigned certain real property and leases, both previously held in its own name and certain leases it has previously held in Cunningham Lease Acquisition, LLC (all real property and all leases detailed in Exhibit A collectively referred to as the "Holdings Assets") to Holdings. In the event the parties do not consummate the Proposed Transaction by the Closing Date, the Holdings Assets shall be immediately assigned back to Cunningham Energy and Cunningham Lease Acquisition.

(ECF No. 9–7 at 1.) Cunningham Energy argues this clause required Vesta to return the Holdings Assets immediately if the transaction proposed by the Second LOI did not close on or before November 15, 2019. Cunningham Energy further argues each of the *Winter* factors is satisfied

and requests that the Court require Vesta to abide by the Holdings Assets clause, which would require Vesta to immediately return all Holdings Assets. (ECF No. 9–7 at 1.) Defendants contest each of the *Winter* factors and argue that certain key terms within the Holdings Assets clause, as defined elsewhere in the document, make the clause non-binding. For the reasons that follow, the Court finds that Plaintiffs' requested relief is not proper under preliminary injunction standards.

Plaintiffs ask this Court to find that the Holdings Assets clause of the Second LOI is binding, and then require Vesta to immediately return the Holdings Assets and the proceeds derived therefrom back to the control of Cunningham Energy. (ECF No. 9 at 1.) Plaintiffs repeatedly classify their request as both a motion for specific performance and a mandatory preliminary injunction and have titled their motion as such. (*Id.*) However, the preliminary injunction and specific performance standards are inherently contradictory. *Compare Sun Microsystems, Inc.*, 333 F.3d at 526 ("[A] mandatory preliminary injunction must be necessary both to protect against irreparable harm in a deteriorating circumstance created by the defendant and to preserve the court's ability to enter ultimate relief on the merits of the same kind.") *with Brand v. Lowther*, 285 S.E.2d 474, 479 (W. Va. 1981) (holding that specific performance is "an extraordinary act of grace on the part of the court," which is only to be granted "where the plaintiff makes out his case fully . . ."). The preliminary injunction standard makes clear that it is meant to "merely to preserve the relative positions of the parties until a trial on the merits can be held." *Camenisch*, 451 U.S. at 395. In contrast, a request for specific performance seeks a court order requiring a party to complete performance under a contract. *Brand*, 285 S.E.2d at 479. Specific performance requires both parties to carry out the obligations described in the contract, which requires the moving party to prove an enforceable contract exists and that such performance was

a specific thing called for under that contract. Such an extraordinary remedy can only logically be ordered after Cunningham Energy has proven their case in full, and after the Court has had the opportunity to consider all the facts and circumstances of the case.

In addition, when looking solely at the preliminary injunction standard, the United States Supreme Court has clearly stated

> [t]he purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held. Given this limited purpose, and given the haste that is often necessary if those positions are to be preserved, a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits. A party thus is not required to prove his case in full at a preliminary-injunction hearing . . . . *In light of these considerations, it is generally inappropriate for a federal court at the preliminary-injunction stage to give a final judgment on the merits.*
>
> Should an expedited decision on the merits be appropriate, Rule 65(a)(2) of the Federal Rules of Civil Procedure provides a means of securing one. That Rule permits a court to "order the trial of the action on the merits to be advanced and consolidated with the hearing of the application." Before such an order may issue, however, the courts have commonly required that "the parties should normally receive clear and unambiguous notice [of the court's intent to consolidate the trial and the hearing] either before the hearing commences or at a time which will still afford the parties a full opportunity to present their respective cases."

*Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) (internal citations omitted) (emphasis added).

Considering the Supreme Court's language in *Camenisch* and the clear differences in proof between a demand for a preliminary injunction and specific performance, this Court cannot grant Plaintiffs requested relief. There is a significant difference between evaluating the likelihood of success on the merits and addressing the merits themselves. Only the first *Winter* factor considers the merits of the action, and it only requires Plaintiffs to make a clear showing that they are *likely* to succeed. *Winter*, 555 U.S. at 20; *see also Imagine Medispa*, 999 F. Supp. 2d at 868. This

standard is not intended to be used to make a binding and final determination on the merits. In fact, it is "generally inappropriate" for a district court to make a final determination at the preliminary-injunction stage at all, even under a properly styled motion. *Camenisch*, 451 U.S. at 395.

Further, the parties neither raised these issues nor did they abide by the notice requirements of Federal Rule of Civil Procedure 65(a)(2). If Plaintiffs wanted an expedited decision on the merits, they should have moved under Federal Rule of Civil Procedure 65(a)(2) to consolidate the injunction hearing with a trial on the merits. Instead, they have asked this Court to make a final judgment under the preliminary injunction standards, which is wholly inappropriate without the proper notice. *See AttorneyFirst, LLC v. Ascension Entm't, Inc.*, 144 F. App'x 283, 287 (4th Cir. 2005) (holding that "before consolidation of a trial on the merits with a hearing on a motion for preliminary injunction is appropriate, 'the parties should normally receive clear and unambiguous notice to that effect either before the hearing commences or at a time which will still afford the parties a full opportunity to present their respective cases'"). Further, because Plaintiffs failed to see the inherent conflict in moving for both specific performance and preliminary injunctive relief, the factual record is not developed. As a consequence, the parties failed to provide this Court with an adequate record to make this determination.

Here, Plaintiffs requested relief does not "preserve the court's ability to render a meaningful judgment on the merits" because they ask this Court to actually render a judgment. *South Carolina*, 720 F.3d at 524. Further, Plaintiffs requested relief would resolve several counts of the Complaint, a fact Plaintiffs admitted at oral argument. Ordering Vesta to perform under the Holdings Assets clause based only on a showing that Cunningham Energy will *likely* be able to

prove that the Second LOI is binding is at odds with both logic and precedent. Plaintiffs have requested relief above and beyond what is contemplated under preliminary injunction standards. Accordingly, the Court Plaintiffs' Motion for Preliminary Injunction is **DENIED**.

### IV. CONCLUSION

For the reasons set forth above, the Court **DENIES** Plaintiffs' Motion for Preliminary Injunction, (ECF No. 9.)

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: May 21, 2020

_____
THOMAS E. JOHNSTON, CHIEF JUDGE